# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Macarena McLardy,<br>    Plaintiff,<br><br>v.<br><br>Mayflower Place Nursing Center, Inc.,<br>    Defendant. | C.A. No. 05 10958 DPW |

## ANSWER AND COUNTERCLAIMS OF
## MAYFLOWER PLACE NURSING CENTER, INC.

The Defendant, Mayflower Place Nursing Center, Inc. ("Mayflower"), answers the

Complaint of Plaintiff, Macarena McLardy, as follows.

### I.      Introductory Statement

Mayflower states that this section is an introductory overview of the relief sought

by the Plaintiff and therefore, no responsive pleading is required.  To the extent a

response is required, Mayflower denies the allegations contained in this paragraph.

### II.      Jurisdiction and Venue

1.      Mayflower admits that this Court has subject matter jurisdiction over

claims brought pursuant to Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 1331

and 28 U.S.C. § 1343 under the definition of "district court" set forth in 28 U.S.C. § 451.

Mayflower denies the remaining allegations contained in Paragraph 1.

2.      The allegations contained in this set forth conclusions of law to which no

response is required.  To the extent a response is required, Mayflower denies the

allegations contained in this paragraph.

3.     Mayflower admits that the alleged unlawful practices occurred within the Commonwealth of Massachusetts and this judicial district.  Mayflower denies the remaining allegations contained in Paragraph 3.

4.     Mayflower lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 4.  In furthering answering, Mayflower states that the Plaintiff's Charge of Discrimination speaks for itself.

5.     Mayflower lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 5.

6.     Admit.

7.     Mayflower lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 7.

8.     Admit.

9.     Mayflower admits that throughout the Plaintiff's tenure of employment to the present, it employs at least 100 employees in the Commonwealth of Massachusetts.

10.     Mayflower states that the allegations of this paragraph set forth conclusions of law to which no response is required.  To the extent an answer is required, Mayflower denies the allegations contained in Paragraph 10.

11.     The allegations contained in this paragraph call for legal conclusions as to which no responsive pleading is required.  To the extent said allegations are construed so as to require a response, Mayflower denies the allegations contained in this paragraph.

12.     Mayflower states that the allegations of this paragraph set forth conclusions of law to which no response is required.  To the extent an answer is required, Mayflower denies the allegations contained in Paragraph 12.

13.     Mayflower states that the allegations of this paragraph set forth conclusions of law to which no response is required.  To the extent an answer is required, Mayflower denies the allegations contained in Paragraph 13.

14.     Mayflower lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 14.

15.     Mayflower admits that in or around November 2000, it began employing the Plaintiff in the position of Licensed Practical Nurse.

16.     Mayflower admits that prior to late May 2004, the Plaintiff did not receive any written warnings concerning her performance.  Mayflower denies the remaining allegations contained in Paragraph 16.

17.     Mayflower states that the Plaintiff was terminated for abandoning 39 elderly patients during an overnight shift, for which she was the supervising nurse, over the course of approximately four (4) hours.  Mayflower denies the remaining allegations contained in Paragraph 17.

18.     Mayflower states that the Plaintiff was terminated for abandoning 39 elderly patients during an overnight shift, for which she was the supervising nurse, over the course of approximately four (4) hours.  Mayflower denies the remaining allegations contained in Paragraph 18.

19.     Mayflower admits that in November of 2003, the Plaintiff reported to Mayflower personnel that she was being stalked by a male co-worker and felt threatened by his behavior in connection with an isolated incident that took place on or about November 28, 2003.  Mayflower denies the remaining allegations contained in Paragraph 19.

20.     Denied.

21.     Mayflower lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 21.

22.     Mayflower admits that it did not terminate the male co-worker but states that he was employed only on a per diem basis at the time of the Plaintiff's complaint and never worked in the facility again following Mayflower's receipt of the Plaintiff's complaint against him.  Mayflower further states that the Plaintiff never worked with the male employee following her complaint about him.  Mayflower denies the remaining allegations contained in Paragraph 22.

23.     Denied.

24.     Mayflower admits that the Plaintiff's employment was terminated for abandoning 39 elderly patients during an overnight shift, for which she was the supervising nurse, over the course of approximately four (4) hours.  Mayflower denies the remaining allegations contained in Paragraph 24.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

## COUNT I

30.     Mayflower incorporates its answers to Paragraphs 1-29 above as if set forth fully herein.

31(a)-(e).  Denied.

32(a)-(c).  Denied.

33.     Denied.

34.     Denied.

Mayflower states that this "Wherefore" paragraph is merely a request for relief to which no response is required.   To the extent any answer is required, Mayflower denies the allegations contained therein.

## COUNT II

35.     Mayflower incorporates its answers to Paragraphs 1-34 above as if set forth fully herein.

36.     Denied.

37.     Denied.

38.     Denied.

39(a)-(e).  Denied.

40(a)-(c).  Denied.

41.     Denied.

42.     Denied.

43.     Denied.

Mayflower states that this "Wherefore" paragraph is merely a request for relief for which no response is required.  To the extent any answer is required, Mayflower denies the allegations contained therein.

### Prayer for Relief

Mayflower states that this section is merely the Plaintiff's Prayer For Relief to which a response is not required.  To the extent that an answer is required, Mayflower denies the "Prayer for Relief" section in its entirety.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

The Complaint is barred by the doctrine of estoppel.

### Third Affirmative Defense

The Complaint is barred by the doctrine of unclean hands.

### Fourth Affirmative Defense

To the extent the Plaintiff has been damaged, which Mayflower denies, any such damage was caused by the Plaintiff's own acts or omissions.

### Fifth Affirmative Defense

The Plaintiff's claims are barred, in whole or in part, by her own conduct.

### Sixth Affirmative Defense

The Plaintiff has failed to act reasonably to mitigate her damages, if any.

### Seventh Affirmative Defense

The Plaintiff has failed to establish a *prima facie* case of discrimination.

### Eighth Affirmative Defense

The Plaintiff has failed to establish a *prima facie* case or retaliation.

### Ninth Affirmative Defense

The Complaint, or parts thereof, is barred by the exclusivity provisions of the Workers' Compensation Act.

### Tenth Affirmative Defense

Some or all of the damages claimed by the Plaintiff are not recoverable as a matter of law.

### Eleventh Affirmative Defense

All employment decisions taken with respect to the Plaintiff were for legitimate and non-discriminatory business reasons.

### Twelfth Affirmative Defense

The Plaintiff is not entitled to relief on her claims under M.G.L. c. 151B or Title VII of the Civil Rights Act of 1964 because Mayflower satisfied any obligation it had to her by promptly taking reasonable and effective steps to remedy the harassing behavior complained of upon receiving Plaintiff's complaint, and the steps taken were reasonably calculated to stop the alleged harassment.

### Thirteenth Affirmative Defense

The Plaintiff is not entitled to some or all of the relief requested in the Complaint because Mayflower did not consider the Plaintiff's color or sex in making its employment

decisions and would have taken the same action with regard to the Plaintiff's employment regardless of any alleged impermissible factors.

### Fourteenth Affirmative Defense

The Plaintiff is not entitled to relief on her claims of sex discrimination/hostile work environment under M.G.L. c. 151B or Title VII of the Civil Rights Act of 1964 because the harassing conduct complained of was not sufficiently severe or pervasive to create a hostile work environment.

### Fifteenth Affirmative Defense

The Plaintiff is not entitled to relief on her claims of race discrimination under G.L. c. 151B or Title VII of the Civil Rights Act of 1964 because she has not alleged, nor can she establish, that she was treated any differently than a similarly situated individual.

### Sixteenth Affirmative Defense

The Plaintiff's claims are barred because Mayflower maintained, disseminated and enforced a clear policy against discrimination and harassment, establishing reasonable and effective means of reporting and seeking relief from conduct believed to be discriminatory or harassing. Mayflower acted in accordance with this policy at all times and the Plaintiff failed to take advantage of these policies or to otherwise avoid harm.

### Seventeenth Affirmative Defense

The Plaintiff's claims are barred, in whole or in part, because she failed to exhaust administrative remedies and/or allow the Massachusetts Commission Against

Discrimination ("MCAD") or Equal Employment Opportunity Commission ("EEOC") an adequate opportunity to investigate or conciliate.

### Eighteenth Affirmative Defense

All claims and allegations of discrimination or retaliation that were not included in Plaintiff's charge filed with the MCAD or EEOC or investigated by the MCAD or EEOC are barred because of the failure to satisfy the statutory prerequisites or because of a lack of subject matter jurisdiction.

### Nineteenth Affirmative Defense

Mayflower was justified in its actions concerning the Plaintiff's employment.

### Twentieth Affirmative Defense

Mayflower's conduct was not intended to cause the Plaintiff emotional distress.

### Twenty-First Affirmative Defense

The Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 4(h) for improper service of process.

### Twenty-Second Affirmative Defense

The Plaintiff's claims are barred by the doctrine of res judicata.

### Twenty-Third Affirmative Defense

The Plaintiff's claims are barred by the doctrine of collateral estoppel.

### Twenty-Fourth Affirmative Defense

Mayflower reserves the right to add other or additional affirmative defenses which are revealed during the course of discovery.

### Twenty-Fifth Affirmative Defense

The claims asserted by Plaintiff in this litigation are wholly insubstantial, frivolous and not advanced in good faith and, therefore, Mayflower is entitled to its attorneys' fees, costs, expenses and interest as set forth in M.G.L. Chapter 231, Section 6F.

### Twenty-Sixth Affirmative Defense

**MAYFLOWER FURTHER ANSWERS THE COMPLAINT AND STATES THAT EACH AND EVERY ALLEGATION SET FORTH IN THE COMPLAINT NOT SPECIFICALLY ADMITTED IS DENIED.**

### COUNTERCLAIMS

### Count I (Malicious Prosecution)

1.    The Plaintiff, Macarena McLardy, was employed as a Licensed Practical Nurse at Mayflower Place Nursing Center, Inc. ("Mayflower") beginning in November of 2000.

2.    Mayflower is a licensed as a long-term care facility under Massachusetts law.

3.    On or about May 21, 2004, the Plaintiff was the supervising nurse on the overnight 11:00 p.m. to 7:00 a.m. shift on one of Mayflower's resident units. She was responsible for the care of 39 elderly residents on the overnight shift.

4.    At approximately 1:00 a.m., the Plaintiff left Mayflower's facility and was observed by Mayflower employees to be in a parked car with an unidentified male until approximately 5:00 a.m.

5.     The Plaintiff instructed the two Certified Nursing Assistants ("CNA") under her supervision to "wave" to her from the window if she was needed on the unit.

6.     The Massachusetts Rules and Regulations governing the Board of Registration in Nursing, which includes Licensed Practical Nurses, prohibited the Plaintiff from delegating her duties to unlicensed personnel such as the two CNAs she left alone on the unit.

7.     The Massachusetts Department of Public Health's regulations required Mayflower to provide adequate and sufficient nursing services to meet the needs of patients and residents. The Plaintiff was hired specifically to fulfill that requirement.

8.     Within weeks of the incident, one of the CNAs informed Mayflower of the Plaintiff's actions on the night in question.

9.     Mayflower promptly investigated the allegations against the Plaintiff and was able to corroborate the allegations regarding her actions on May 21-22, 2004, and also learned that the Plaintiff had been observed on other occasions also leaving the building during work hours.

10.   During the course of its investigation, Mayflower learned that the Plaintiff's absence from her unit resulted in a resident being unable to obtain pain medication that was a necessary to treat chronic nighttime pain. The Plaintiff was aware that this resident was receiving pain medication on the overnight shift on a regular basis.

11.   At the time of the Plaintiff's actions on May 21-22, 2004, Mayflower maintained a written policy that stated that "gross misconduct" included leaving work without permission and was grounds for immediate dismissal. The Plaintiff's conduct on

May 21-22, 2004 warranted immediate dismissal in accordance with Mayflower's policy. The Plaintiff agreed to abide by Mayflower's policies as evidenced by her written acknowledgement of receipt and understanding of Mayflower's personnel policies dated November 16, 2000.

12.     As a result of the Plaintiff's conduct, Mayflower terminated the Plaintiff's employment on or about June 4, 2004.

## COUNTERCLAIMS

### Count I – (Malicious Prosecution)

13.     Mayflower incorporates the allegations contained in Paragraphs 1-12 as if set forth fully herein.

14.     The Plaintiff maliciously instituted the instant action against Mayflower, without probable cause to do so.  Plaintiff is well aware of her actions on the night of May 21-22, 2004, and knows that her claims against Mayflower have no merit whatsoever.

15.     At the time she filed the instant action, the Plaintiff was aware that the Board of Review of the Massachusetts Department of Unemployment Assistance (the "DUA") had concluded, by way of a final decision, that her employment at Mayflower was terminated as a result of her knowing violation of a reasonable and uniformly enforced company rule or policy, more specifically, for abandoning 39 elderly nursing home patients for which she was the supervising Licensed Practical Nurse, for approximately four (4) hours on an overnight shift on or about May 21, 2004.  (**See Exhibit A**, DUA Administrative Record).

16.     Despite the prior finding in favor of Mayflower with respect to the reason for Mayflower's termination of the Plaintiff's employment, she has brought the instant action causing Mayflower to once again defend itself against her baseless claims regarding the termination of her employment.

17.     As a result of the Plaintiff's actions, Mayflower has suffered damages and will continue to suffer damages.

### Count II - (Abuse of Process)

18.     Mayflower incorporates the allegations contained in Paragraphs 1-17 as if set forth fully herein.

19.     The Plaintiff initiated the instant action against Mayflower without probable cause to do so.

20.     The Plaintiff initiated the instant action against Mayflower for the ulterior and illegitimate purpose of forcing Mayflower to defend itself against her baseless claims regarding the termination of her employment.

21.     As a result of the Plaintiff's actions, Mayflower has suffered damages and will continue to suffer damages.

### JURY DEMAND

Mayflower demands a trial by jury on all claims so triable on the Complaint and the Counterclaims.

### PRAYER FOR RELIEF

WHEREFORE, Mayflower demands that this Court:

1.     Grant the relief sought by Mayflower above;

2.      Deny the relief sought by the Plaintiff and enter judgment in favor of

Mayflower on all counts.

3.      Determine Mayflower's damages and award judgment against the Plaintiff

in an appropriate amount, plus interest, attorneys' fees and costs;

4.      Award Mayflower its costs, expenses, attorneys' fees and interest under

M.G.L. Chapter 231, Section 6F; and

5.      Grant such other and further relief as is reasonable and just.

**MAYFLOWER PLACE NURSING
CENTER, INC.**

By their attorneys,

*Nancy J. Puleo*

Valerie C. Samuels, BBO #548539
Nancy J. Puleo, BBO #648457
Posternak Blankstein & Lund LLP
The Prudential Tower
800 Boylston Street, 33rd Floor
Boston, MA  02199-8004
(617) 973-6100

Dated:  September 23, 2005

**CERTIFICATE OF SERVICE**

I, Nancy J. Puleo, Esquire of Posternak Blankstein & Lund LLP, hereby certify
that on this 23 day of September, 2005 I caused a copy of the above to be served by first-
class mail to Stephen Thomas Fanning, Esquire, 305 South Main Street, Providence,
Rhode Island 02903.

*Nancy J. Puleo*

Nancy J. Puleo

EXHIBIT A



# THE COMMONWEALTH OF MASSACHUSETTS
### DIVISION OF UNEMPLOYMENT ASSISTANCE
## BOARD OF REVIEW
### 19 STANIFORD STREET, FIRST FLOOR
### BOSTON, MA 02114
### (617) 626-6400

COPY

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LT. GOVERNOR

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

## DECISION ON APPLICATION FOR FURTHER REVIEW
## BY THE BOARD OF REVIEW

**BR-95576**

**EMPLOYING UNIT:**
Mayflower Place Nursing Center

**CLAIMANT:**
Macarena McLardy
3 Franbill Road

Hyannis, MA 02601-1426

579 Bucks Island Road
West Yarmouth, MA 02673-

Office # 43
Hearings Department Docket #: 391142
Hearings Decision Mail Date: 11/15/04

The claimant in the above-entitled matter has appealed the decision of the Commissioner to the Board of Review in accordance with G.L. c. 151A, § 40.

After examination of the record of the hearing afforded by the Commissioner, the finding of fact and the decision, the Board of Review has denied the application for review.

**The denial of this appeal makes the decision of the Commissioner the <u>final</u> decision of the Board of Review. Any further appeal would be to a Massachusetts district court (see Section 42 of Chapter 151A of the General Laws quoted on the reverse side of this form).**

### DATE OF MAILING: 12/30/04

*Francis J. Holloway*
Francis J. Holloway
Chairman

*Thomas E. Gorman*
Thomas E. Gorman
Member

*Donna A. Freni*
Donna A. Freni
Member

**CLAIMANT ID # 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**
**EMPLOYING UNIT I.D. 80-826620**
**The period to appeal this decision to court referred to in Section 42 expires at the end of thirty days from the date of mailing of this decision. The final date to appeal this decision to court will be 1/31/05.**

Form L-1811-A Rev 6-04



COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
BOARD OF REVIEW
19 Staniford Street, Boston, MA 02114

Docket Number: _____

## APPEAL TO THE BOARD OF REVIEW FROM A DECISION OF THE COMMISIONER FOR EMPLOYMENT AND TRAINING

*2 5 e 2*

Appeal filed by:  X  Claimant    ☐ Employer

| | |
|---|---|
| Local Office No.: | 43 |
| Hearings Region: | 5 |
| BYE: | |

Claimant's Name: *Macarena Mc Lardy*
(print)

Address: *Three Franbill Rd.*

City or Town: *Hyannis*  State: *MA*  Zip Code: *02601-1456*

Telephone No.: *(508) 771-5617*  Soc. Sec. No.: *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*
area code

Employer's Name: *Mayflower Place Nursing Home*
(print)

Address: *579 Bucks Island Rd.*

City or Town: *W. Yarmouth*  State: *MA*  Zip Code: *02673*

Telephone No.: (    )  Employer No.: *86-826650*

I appeal from the decision of the Deputy Director issued on *11/15/04* in Hearings Docket Number *391143*.
(date)

I believe the decision was in error for the following reasons: (Please state specifically and in detail the reasons for your appeal. Use additional sheets if necessary.)

Signed:                           Date:

(OVER)

1801 Rev 11-04

---

**ADDITIONAL INFORMATION**

If you did not receive your decision within thirty days after it was mailed to you by the Division of Unemployment Assistance (DUA), you should file your appeal immediately and explain when you actually received the decision.

You have a right to be represented by counsel. If you cannot afford one, you may be entitled to representation by a legal services office in your community or the local bar association.

The Board of Review has twenty one days from the date of your appeal to review your case. The Board is not required to allow every appeal. Therefore, it is very important that your appeal explain why you think the decision of the Commisioner was in error and why the Board of Review should take the appeal.

DEC 1 5 2004

Massachusetts Division
Of Unemployment Assistance

Hearings Department   RECEIVED
Southeast Region
37 Main Street
Taunton, MA 02780

Macarena McLardy
Claimant

Docket:   391142
SSN #:   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
Date of Determination:  6/21/04

v.

Mayflower Place Nursing Home,
Respondent/Employer

## APPEAL TO THE BOARD OF REVIEW
## OF A DECISION OF A REFEREE OF THE
## MASSACHUSETTS DIVISION OF
## UNEMPLOYMENT ASSISTANCE

The above-referenced Claimant, Macarena McLardy, hereby files this Appeal of a

Decision of the Massachusetts Division of Unemployment Assistance, seeking review of

a decision of the Referee, disqualifying her from unemployment insurance benefits, on

the Referee's finding that "the claimant was discharged for a knowing violation of a

reasonable and uniformly enforced company policy and that the violation was not the

result of any incompetence on the part of the claimant." (DUA decision, p.4)   The

decision of the Referee should be reversed in that it is:

1.    In violation of constitutional or statutory provisions;

2.    In excess of the statutory authority of the agency;

3.    Made upon unlawful procedure;

4.    Clearly erroneous in view of the reliable probative and substantial evidence

   and testimony on the whole record; and/or

5.    Arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

In support of this appeal, the Claimant submits the following:

### I.    Facts:

The Claimant was employed from November 16, 2000 until June 4, 2004, when she was discharged from her job as a Licensed Practical Nurse. The Claimant had compiled an exemplary and unblemished record, up to the alleged event resulting in her discharge. It is the Employer's position that it discharged the Claimant for allegedly leaving her workstation, without authorization, for approximately 4 hours during her overnight shift on May 21, 2004. The Employer asserted that it considered the Claimant's actions to be in violation of its policies prohibiting leaving work without permission, as well as negligence. The Claimant has categorically denied having left her workstation, as alleged by the Employer.

### II.    ARGUMENT

In denying benefits, the Referee has relied almost exclusively on the testimony of a single witness provided by the Employer at the hearing. Although the Employer claimed another witness existed, with direct knowledge of the events at issue, no such witness nor verified statement from any such witness was produced. By the same token, although the Employer claimed to have statements from other employees, allegedly attesting to a pattern of alleged misbehavior on the part of the Claimant, no such statements were produced at hearing and any statement alleged to

exist, by the Employer's own testimony, was taken months *after* the Claimant's termination, in some instances were not even signed, and had no bearing on the decision to terminate the Claimant. It was improper for the Referee, and an abuse of his discretion, to have given such unreliable evidence any weight whatsoever.

In essence, the Referee has taken the testimony of one unreliable witness, as further explicated below, and has sought to expand her testimony to encompass and substantiate bald and unsupported statements made by the Employer. The only direct evidence against the Claimant was provided by a C.N.A. under her supervision on the night of the Claimant's alleged misconduct. The Referee's statement on p. 4 of his decision that this witness, "had no reason to be deceptive and no testimony or evidence was presented to establish that this witness had anything to gain by her testimony," is categorically belied by the record evidence. By the same token, his statement that: "the claimant, on the other hand, had everything to gain by her vehement denials of the allegations made against her," is clearly based on the Referee's own biased perception, and not on any basis reasonably related to her testimony or the evidence presented at the hearing. In essence, the Referee ignored the weight of the record evidence, and simply concluded that the Claimant must be lying, simply because of the fact that she was fired; and the witness must be telling the truth, simply because she was not fired. The Referee's conclusions are marked by an arbitrary, capricious, and puzzling lack of reasoning.

The record is replete with evidence that the employer's witness clearly had something to gain by her testimony – her continued employment, among other gains! This witness conceded, as did the Employer, that – if one were to credit her testimony

– she was negligent in her patient care, failed to take appropriate steps to remediate what she believed to be a dangerous situation, failed to report serious misbehavior by her supervisor, and otherwise breached several other employer policies, as well as laws and regulatory provisions of the Commonwealth, any one of which could have resulted in termination, loss of professional certification, and perhaps criminal penalties.

Indeed, this alleged "witness" conceded that she took **no action**, by her own testimony **for over four hours**, despite the fact that she believed patients to be in danger. She did not report the Claimant's alleged misconduct to the Charge Nurse, the Administrator of the facility, security personnel, or to any other responsible authority, although she concedes that she had the knowledge and wherewithal to contact such authority. Rather, **when a patient was allegedly crying and moaning in pain**, she allegedly opted to let this patient suffer, rather than disturb the alleged illicit activity of the Claimant. Indeed, the employer's witness did not even report this alleged incident for approximately one week!  For the above blatant misconduct, this witness was not terminated, suspended, or subject to any other formal discipline in her personnel file. The Employer made no report of this person's conduct to state regulatory authority, as it is legally compelled to do.

On the contrary, this employee continues to work for this employer, an employer which has provided to her assistance and other benefits while she continues her studies, in order to advance in her own medical career and certifications.  Notably, the other CNA on duty on the night in question, who was not presented for testimony, likewise suffered no adverse consequence as a result of his admitted breach of the Employer's so-called

policies.)  The Employer also made no report of his inaction to state regulatory authorities.

The Referee seems to have been moved by the witness's assertion that she "considered reporting the matter to the other supervising nurse on duty, but did not do so, because she did not want to get her own supervisor in trouble." (DUA, p.2) This is the same C.N.A. who also refused a patient pain medication, allowing said patient to fall asleep instead, without alerting her superior(s) to any issue regarding the Claimant. This is the same C.N.A. who took at least a week to report the alleged incident to the employer, and allegedly only took action when allegedly she was told by: "several other CNA's that they had seen the claimant engage in this type of behavior in the past." (DUA, p.3) (At the hearing, the Employer produced **none** of these alleged individuals, and the witness did not identify a single one.) To conclude that such a witness had nothing to gain by falsely accusing the Claimant of misconduct does not implicate a good faith determination of credibility, but simply a wholesale disregard by the Referee of record evidence.

The Referee seems to find the witness credible because, at the hearing, she stated things that were "not in her best interest."  This statement by the Referee defies logic. The comments made by this witness were not in the nature of first-time admissions.  For months, the Employer was admittedly aware of her conduct, and that of the other CNA on duty on the night in question, but chose to ignore such misconduct.  Indeed, the Employer violated existing law by not reporting such conduct to regulatory authorities.  It showed no such forbearance in the case of the Claimant, making an immediate report to regulatory authorities, without even completing its investigation or giving the Claimant a

reasonable opportunity to respond.  The Employer's witness had clearly *already* gained by her duplicity in concert with the Employer, in wrongfully accomplishing the Claimant's discharge.  She saved her employment, avoided discipline, avoided sanction by regulatory authority, and was permitted by the Employer to continue to advance her career, in the face of her obvious and admitted wrongdoing.  In light of these facts, a reasonable hearing officer would have concluded that it was just as likely that the witness had a great deal more to lose, including her career, had she told the **truth** at the hearing – that she had no knowledge of any misconduct on the part of the Claimant. (The Referee's further reliance on the witness because she allegedly "observed" a car in the parking lot and an unidentified "male" do not add to her credibility, in that she could not describe the car, could provide no license or identifying information despite an "illuminated lot", and could only describe the male as being "black.")

The above evidence clearly established that the Employer did not maintain reasonable and uniformly enforced policies, within the meaning of Section 25(e)(2). Testimony by the Employer's C.N.A. established she was unaware of a policy prohibiting employees from leaving the building.  However, the key policies at issue are those relating to the proper care of patients; and, in that regard, the evidence is indisputable that the Employer – if, for the sake of argument, its testimony is to be credited – chose to treat the Claimant differently than everyone else. (Again, the Claimant vehemently denies that she engaged in any misconduct, but the record evidence is nevertheless indisputable that, even if the Employer thought she did so, its disciplinary and reporting policies were applied in a disparate manner.)

Further, the Referee erred by essentially refusing to permit the Claimant to present detailed evidence bearing on the Employer's motivation in falsely accusing the Claimant of misconduct. The Claimant attempted to present documentary and testimonial evidence that, preceding her discharge, she had complained to the Employer that she was being "stalked" by a co-employee and, as a result of the employer's inaction, had been compelled to make a report to local law enforcement authorities. The Plaintiff also attempted to provide testimony that, shortly before her discharge, she complained to Employer authorities that her schedule and hours were being changed because they violated DPH regulations and the Employer was concerned regarding a pending audit. Claimant complained that she was being mistreated, in light of the Employer's violations of Department of Public Health Regulations, No. 150.007, relating to Nursing Services. Approximately three weeks later she was fired. The record will substantiate that the Referee frustrated the Claimant's efforts to provide such relevant evidence, preferring to make the puzzling statement that the Employer had to prove its case, she did not have to provide evidence to disprove it. Such an approach clearly undermines a Claimant's right to produce relevant and probative evidence in support of her claim. Indeed, when the Claimant attempted to submit a copy of the affidavit she had submitted to the Commonwealth's Department of Public Health, the Referee refused to accept it. (Attached as Exhibit 1.) **(For the record, to date, the DPH has made no finding whatsoever that the Claimant had engaged in misconduct of any type.)** Notably, the referee's decision makes no mention whatsoever of the evidence Claimant sought to provide clearing calling into question, with other record evidence, the legitimacy of the Employer's motivation in terminating the Plaintiff.

Instead, the Referee proceeded to disregard any issue raised by the Claimant, rendering a decision that ignores the record evidence adduced in the course of a nearly two-hour hearing and, for all intents and purposes, is devoid of reasonable explanation.

### III.   CONCLUSION

The record evidence is clear that the Referee has issued a decision that is arbitrary and capricious, and vastly exceeding his discretionary authority. He essentially disregarded the evidence, in an attempt to reduce a complicated case into a simple "she said – she said" credibility dispute. While doing so might make the Referee's work easier, it is grossly unfair to the Claimant, especially when the weight of record evidence is so demonstrably contrary to the statements of the Employer and its sole witness. There is no precedent in the Commonwealth for denying a Claimant unemployment benefits, on a so-called credibility determination, when the Referee's decision is so clearly erroneous, at odds with the evidence, premised on clear misstatements, and influenced by his deliberate and unfounded refusal to permit the Claimant to adduce probative evidence.

In light of all the above, the Claimant respectfully requests that the decision of the Referee be reversed and that her benefits be immediately approved.   In the alternative, she requests that she have the opportunity to present new evidence and argument before the Board of Review. This matter has now been pending since July, 2004. Therefore, the Claimant respectfully requests an immediate hearing before the Board.  At this time, the Claimant also requests that she be provided with transcripts of all hearings, at her expense, pursuant to the further processing of this matter.

Respectfully Submitted,
For the Plaintiff,
Macarena McLardy,
By Her Attorney,

Stephen T. Fanning #542343
305 South Main Street
Providence, RI 02903
401-272-8250;  FAX: 401-272-4520

**THE COMMONWEALTH OF MASSACHUSETTS**
EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES
DEPARTMENT OF PUBLIC HEALTH
DIVISION OF HEALTH PROFESSIONS LICENSURE
239 CAUSEWAY STREET, BOSTON, MA. 02114

DOCKET NO. LN-05-021

## AFFIDAVIT OF MACARENA MCLARDY

I, Macarena McLardy, being duly sworn, hereby depose and state as follows:

1. My name is Macarena McLardy.

2. My date of birth is 7-17-82.

3. I currently reside at 3 Franbill Road, Hyannis, Massachusetts, 02601; telephone: 508-771-5617. I have resided at this address since on or about July 15, 2004. (My previous address was 393 Old Jail Lane, Barnstable, MA 02630-1426.)

4. I have approximately four years of professional service as a Licensed Practical Nurse. I received my training from Upper Cape Technical School, LPN Program. I completed the program in June, 2000. I passed my professional nursing board exam in August, 2000, on my first try.

5. Since concluding my certification program, I have continued my education by beginning prerequisite courses for the LPN to RN transition, an Associate's Degree program, at the Cape Cod Community College, in Barnstable, MA. (See attached documents, Exhibits 1a-e, which include, among other documents, a copy of my current course schedule, past courses, and certain unofficial grade transcripts.)

6. During or about October of 2000, I was employed by Mayflower Place Nursing and Rehabilitation Center, in West Yarmouth, MA. I held the position of LPN.

7. My last work shift for Mayflower Place took place on May 28-29, 2004, as discussed in more detail below.

8. While I was employed at Mayflower Place, I also worked as a traveling nurse through Norton and Associates, a temporary nurse placement agency located in Hyannis, MA. I worked for Norton for approximately two years, accepting various *per diem* assignments. At all times, I have maintained an exemplary performance record. I have requested and I am awaiting a letter from Norton verifying the dates and quality of my performance.

9. While I was employed by Mayflower Place, I also worked as a *per diem* nurse through *READYNURSE*, a temporary nurse staffing agency, whose primary office is located in Warwick, Rhode Island. I commenced work through this agency, on or about March 4, 2004. Following my separation from Mayflower Place, on or about May 28-29, 2004, I have continued to work for READYNURSE, accepting various *per diem* nursing assignments. (Exhibit 2.) At all times, I have maintained an exemplary performance record.

10. In any nursing position I have had, I have fulfilled all of my professional duties in a conscientious manner.

11. As noted above, during or about October 2000, I was hired by Mayflower Place.

12. Throughout the course of my employment, I fulfilled my professional duties in a conscientious manner, to the best of my ability. At no time prior to the alleged incident resulting in my discharge, was I ever disciplined in any way for any conduct involving unsatisfactory patient care or treatment or dereliction of any duty whatsoever.

13. On or about May 30, 2004, I was notified by Mayflower Place, in a recorded telephone message by Sheri Fox, Weekend Shift Supervisor, telling me not to report to work that night, my next regularly scheduled shift, beginning at 11pm. She left me no other explanation. I returned the telephone call that same day, and spoke to Susan Sponberg, RN Supervisor. Sponberg would give me no information why I had been removed from the schedule. She told me to call back on Tuesday, June 1, 2004, if I wanted additional information. The statement by Administrator Cathy Sawyer, in her letter to me dated June 4, 2004, that I was instructed to call back on May 31, 2004, is false.

14. I received a call from Margaret O'Reagan, Director of Nurses, on May 31, 2004, who left another recorded message, asking me to contact her. I made repeated attempts to do so. I was finally successful in contacting O'Reagan on June 1, 2004. Despite my requests, O'Reagan refused to provide any specific information regarding the reason for my having been removed from the schedule, but only indicated that it had to do with alleged abuse of a resident. She stated, "I have plenty of statements...I don't need to talk to you." I insisted on having an opportunity to be informed of any alleged misconduct, and to have an opportunity to respond. She then agreed to meet with me on June 2, 2004. I subsequently concluded that, in light of the fact that the employer had already made a decision to discipline me, without any input or response from me, I would prefer to attend any meeting with a witness or counsel. I spoke with Cathy Sawyer, Administrator, and she agreed to reschedule the meeting for a date, at the beginning of the following week.

15. On Thursday, June 3, 2004, I received a telephone message from Margaret O'Reagan requesting that I contact her. When I called back, O'Reagan was unavailable and I spoke to Administrator Sawyer. Sawyer reversed her previous

2

position, agreeing to meet with me at the beginning of the next week, and ordered me to bring in a statement that day. At this time, I had still not been provided any specific information relative to the allegations at issue, only that it involved alleged abuse of a resident and perhaps something to do withholding pain medication. She stated that if I did not bring in a statement, I would be terminated that day. Pursuant to the Administrator's instructions, I caused a statement to be hand-delivered to the employer on that same date. In this statement I indicate, among other things, that I was willing to cooperate with the employer in any way possible, and willing to meet with the employer at any time to address this situation. (Exhibit 3)

16. I called the employer again on June 4, 2004, and spoke to Cathy Sawyer and Margaret O'Reagan. I reiterated my desire and intention to cooperate fully in any investigation. I requested further information regarding the allegations, and reiterated my willingness and availability to meet with employer officials. They told me not to bother coming in, because they had already sent me a letter.

17. On or about June 5, 2004, I was terminated by letter from Cathy Sawyer, dated June 4, 2004. My last paycheck was included in that letter. Notably, my last paycheck is dated June 1, 2004, and indicates, in handwriting by Margaret Holmes, who is essentially the ultimate authority at Mayflower Place, that this was my "final check." I normally receive direct deposit wages, but the check in question was handwritten by Ms. Holmes. Therefore, it is clear that the decision to terminate me was made no later than June 1, 2004, before I was given any opportunity to submit a written statement or have any meeting with my employer in order to address the allegations against me. (Exhibit 4)

18. In her letter of termination, dated June 4, 2004, Ms. Sawyer states that my written response was "simply a denial of the allegation" and did not provide any corroboration of my denial. I was never provided with specific information of the charges against me. Therefore, Sawyer is essentially stating that I was terminated because I was unable to provide specific information to refute allegations, the substance of which was never provided to me. Sawyer stated that I "did not provide [her] with any explanation" of what I did on my shift. That was never requested by Sawyer or anyone else. The answer to that question is that I performed my regular assigned job duties, as would be verified by nurses' notes, medication logs, treatment books, and other documents pertinent to my shift activities. To my knowledge, the employer has been unable to point to any irregularities in these documents which would substantiate that I was absent from or derelict in my appointed duties, at any time.

19. The allegations referenced in the letter to me from the Department of Public Health, dated August 6, 2004, are false and/or misleading. First, that letter indicates that I signed off on all assigned treatments, including a resident who was to receive fluids every two hours, as well as monitoring a resident receiving G Tube continuous feed. If the implication is that I signed off on assigned treatments which I did not administer, then I **categorically deny** this allegation. I

3

maintain that any treatment confirmed by my initial was administered by me on the date and at the time referenced. On the shift in question, I performed all my duties, as assigned. I was never absent or derelict in my performance of these duties, as contemporaneous records will corroborate. Moreover, as a usual matter, if lab orders are not done, which I have no reason to believe is the fact in this case, it would not necessarily be the result of the charge nurse not completing 24 hour checks. It is my understanding that Susan Sponberg, RN Supervisor, signed off ("noted") in writing doctor's orders for lab tests for the patients allegedly involved, as is the customary employer practice. There is no evidence that I am aware of to support any alleged misconduct in any of these areas.

20. My attorney subsequently wrote to Ms. Sawyer, indicating my concerns regarding the unfair manner in which I was being treated. It is my understanding that my attorney also spoke with Ms. Sawyer by telephone, confirming my intention and commitment to meet with employer officials, in order to clarify any allegations against me and to respond to said allegations. (Exhibit 5) Despite her promises to the contrary, Ms. Sawyer never scheduled such a meeting.

21. I was not afforded any opportunity to participate in any investigation, especially since I was not aware of, and had been given no specific information regarding the allegations at issue.

22. I met all of my obligations as an LPN, Charge Nurse at all times. On May 21-22, 2004, at no time did my conduct consist of neglect, patient abandonment, or inadequate supervision, as falsely charged by my employer. I **categorically deny** being absent from the building during my shift on the dates in question for any period of time. I **categorically deny and dispute** that there are any reliable witness statements to confirm these allegations. If any such statements exist, and I have never been provided with such statements, such statements are **absolutely false.**

23. I am unaware of any reliable, truthful, or unbiased witness statements that have been taken by the employer to support these false allegations.

24. I **categorically and absolutely deny** that, on May 21-22, 2004, or on any other date, I engaged in any conduct, comprising patient neglect, patient abandonment, or inadequate supervision. I challenge and defy Mayflower Place to produce reliable and credible evidence to the contrary.

25. I **categorically and absolutely deny** that, on May 21-22, 2004, I left the facility and remained outside of the facility with a male visitor, as falsely alleged by my previous employer.

26. Throughout my nursing career, I have never been accused of any misconduct, or been issued any warning or disciplinary action, prior to this alleged incident.

27. I note, for the record, that the alleged report of my alleged misconduct was not made, by the employer's own statement, until May 30, 2004, more than a week

had any legitimate concern regarding my performance, he/she would not have waited approximately eight days to report such conduct. By the same token, I am not aware that this employee was subject to any discipline as a result of his or her apparent dilatory action in reporting this alleged misconduct.

28. As noted above, I was available and willing at any reasonable time to meet with my employer, with reasonable notice, to discuss and refute the allegations against me. My employer's implication to the contrary is absolutely untrue.

29. I believe my employer's conduct in terminating me, for alleged misconduct in which I did not participate nor engage, is a pretext to conceal its true retaliatory and coercive motive.

30. During or about December of 2004, I reported to my employer that I believed I was being stalked, harassed, and threatened by a fellow male employee. My employer failed, in my view, to take my complaints seriously, or to take effective remedial action. In fact, this employee was permitted to continue his employment in the facility, despite unrefuted and admitted evidence of his misbehavior, and was allowed to remain in a position in which he could continually pose a threat to my health, welfare, and safety.

31. It was the employer's own conclusion that the employee referenced in the previous paragraph had engaged in willfully intimidating me, and that termination would have been reasonable. Yet the employer did not terminate this employee, but continued to place me in jeopardy, by having to work in the same facility with him. I was told the employer did not terminate this employee because of his race and national origin (black, Haitian) and that he was in a protected class.

32. Because of the employer's inaction, it was necessary for me to report these incidents to local police authorities.

33. I believe in good faith that the employer's action in terminating me was in unlawful retaliation for my having complained regarding what I believed to have been a fellow employee's unlawful misconduct, and because I objected to what I reasonably believed to be the employer's inadequate response to this situation.

34. I believe I was also terminated in retaliation for my having disagreed with my employer's conduct in unilaterally changing the terms and conditions of my employment, as referenced in my original letter of hire. My original schedule called for me to work Fridays 3pm-7am; Sundays 11pm-7am. After approximately two years of working this schedule, I was informed by Sheri Fox that the schedule had to be changed because it was in violation of DPH regulations and because there may be a state facility audit.

35. I have filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission referencing these issues. (Exhibit 5)

that I had to be temporarily taken off this schedule, with a resulting loss of hours and pay, while the risk of an audit existed. I was concerned because I felt I was being put in the position where I felt Mayflower Place was manipulating my schedule and pay for its own benefit, regardless of the applicable state regulations. I complained about this unlawful situation and believed I suffered reprisal as a result. I was fired within approximately 3 weeks of my complaint. (See DPH Regulation 150.007 -- Nursing Services.)

35. I have filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission referencing these issues. (Exhibit 6)

36. In terminating me, the employer denied my right to have this matter reviewed through the employer's Grievance Procedure, as referenced in the employer's Employee Policy Manual, pages 14, 15 (Exhibit 7)

37. In summary, in response to the request for a response from the Department of Public Health, please note that I do not have in my possession any materials pursuant to any alleged investigation conducted by Mayflower Place. I am preparing an updated resume, and have requested performance evaluations/letters from my other employers. (Exhibit 8 is a letter on my behalf from a current employee of Mayflower Place, with approximately 15 years service.) For the record, I have never had any action taken against me relative to my professional licenses in Massachusetts or any other state or jurisdiction, and have never been terminated from any prior position. I **categorically deny** the allegations that have been made against me by Mayflower Place, and have was not provided any reasonable opportunity to refute these allegations prior to the termination of my employment.

**VERIFICATION**

I hereby attest that the above is true and correct based on my good faith knowledge and belief and the information currently in my possession.

Macarena McLardy

**NOTARY**

Signed under the pains and penalties of perjury, on this _3rd_ day of September, 2004.

Macarena McLardy

Signed Before me on this _3rd_ day of September, 2004

(Notary Public) _Brie Fanning_

BRIE FANNING
Notary Public of Rhode Island
My Commission Expires 8/13/2007

7

**DUA**
MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE

MAYFLOWER PLACE NURSING CENTER

579 BUCKS ISLAND RD
W YARMOUTH    MA026730000

TAUNTON,    MA  027800000
Phone:    (508) 824 - 6458
Fax:      (617) 727 - 2273
TDD:      (800) 438 - 0471

BR-95576

## APPEAL RESULTS

Docket :    391142

Mail Date :    NOVEMBER 15, 2004

Appellant :  EMPLOYER

Local Office :   43 - 0

| Claimant : | Date Of Determination : 06/21/04 |
|---|---|
| MACAREN  MCLARDY | Hearing Request Filed : 06/22/04 |
| 3 FRANBILL ROAD | Hearing Date :    11/05/04 |
| HYANNIS    MA026011426 | Location Of Hearing :   HYANNIS |
| SSN :  017 - 72 - 5818 | |

| Employer : | Original Determination : |
|---|---|
| MAYFLOWER PLACE NURSING CENTER | AFFIRMED        [  ] |
| 579 BUCKS ISLAND RD | OVERTURNED      [ X ] |
| W YARMOUTH    MA026730000 | OTHER          [  ] |
| EMP # :  80826620 | |

Appearances :

Claimant        [ X ]        Employer        [ X ]

Claimant's Rep/Attorney  [  ]    Employer's Rep/Attorney  [  ]    Interpreter  [  ]

*************************************************************************
**You may appeal this Decision to the Board of Review.**
**The last date to file an Appeal is        DECEMBER 15, 2004**
*************************************************************************

Commonwealth of Massachusetts

Mitt Romney, Governor
Kerry Healey, Lt. Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance



**DIVISION OF
UNEMPLOYMENT
ASSISTANCE**

Hearings Department
Southeast Regional Office
37 Main Street
Taunton, MA 02780
Phone:  508-824-6458
Fax: 617-727-2273
TDD:  1-800-438-0471

## DECISION

### DOCKET NUMBER: 391142

## I.    STATUTORY PROVISION(S) AND ISSUE(S) OF LAW:

MGL Chapter 151A, §§25(e)(1) & (e)(2) - Whether there is substantial and credible evidence to show that the claimant left work voluntarily with good cause attributable to the employer or its agent, or involuntarily for urgent, compelling and necessitous reasons, or by discharge for deliberate misconduct in wilful disregard of the employing unit's interest, or for a knowing violation of a reasonable and uniformly enforced policy or rule, unless the violation was the result of the employee's incompetence.

## II.    FINDINGS OF FACT:

1.  The claimant was employed from November 16, 2000 until June 4, 2004 when she was discharged from her job as a Licensed Practical Nurse.

2.  The employer operates a nursing home/rehabilitation center.

3.  The employer discharged the claimant for leaving the workplace, without authorization, for approximately 4 hours during her overnight shift on May 21, 2004.

4.  The employer considered the claimant's actions to be in violation of their company policies that prohibit leaving work without permission and negligence.

5.  The employer's policy that prohibits employees from leaving work without permission was enacted to ensure that sufficient staff was always present to provide appropriate care to its residents.

Mitt Romney, Governor
Kerry Healey, Lt. Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance


The policy applies to all employees. Although no other employee has ever been found to have violated the policy, the employer maintains that any/all known violators of this policy would be discharged due to the reason for having such a policy and the nature of their business. Additionally, this written policy, which is contained in an employee handbook, is prefaced by a statement that cites immediate discharge as the disciplinary action for a violation of such.

The claimant was admittedly fully aware of this policy.

6. The employer's policy that prohibits negligence is also contained in the employee handbook and the prescribed disciplinary action for such is also immediate discharge.

This policy also applies to all employees.

The claimant was admittedly aware of this policy.

7. On May 21, 2004, the claimant was scheduled to work from 3 p.m. until 7 a.m. on May 22, 2004.

During that shift, the claimant was the supervisor in charge of 2 certified nursing aides, one of whom the claimant had only worked previously on 1 or 2 occasions. The claimant had never had any difficulties with this C.N.A and the C.N.A. had never had any previous difficulties with claimant.

At approximately 12:45 a.m., the claimant told the C.N.A. in question that she was going to go out to the parking lot to take her meal break. Meal breaks are 30 minutes in duration. The C.N.A. in question, observed the claimant leave the building and join a man in a car parked in the employer's illuminated parking lot approximately 30-40 feet from the building. When the claimant did not return to work within 30 minutes, the C.N.A. in question failed to report the matter to the other supervising nurse on duty because she expected the claimant to return to work any minute. Between 2:30 a.m. and 3 a.m., the C.N.A in question looked out a window and observed that the claimant was still sitting in the car in the parking lot with the unidentified man. The C.N.A. in question considered reporting the matter to the other supervising nurse on duty, but did not do so because she did not want to get her own supervisor in trouble.

During the time the claimant was out of the building, a patient requested pain medication. The C.N.A in question, who was not authorized to dispense such medication, allowed the patient to fall back to sleep without obtaining any medication because the claimant remained outside of the building.

Commonwealth of Massachusetts

Mitt Romney, Governor
Kerry Healey, Lt. Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance

**DOCKET NUMBER: 391142**

The C.N.A. in question personally observed the claimant re-enter the employer's building at approximately 5 a.m.

8. After the considering the claimant's actions for several days and after other C.N.A.s told her that they had seen the claimant engage in similar conduct in the past, the C.N.A. in question decided to report the claimant's actions to the employer. She did so on May 30, 2004.

9. Immediately after receiving the report from the C.N.A. in question, the employer suspended the claimant from work while they conducted an investigation into the allegations made against her.

   During the investigation, several other C.N.A.s told the employer that they had seen the claimant engage in this type of behavior in the past and the other C.N.A that worked under the claimant's supervision on the overnight shift on May 21, 2004 verified the C.N.A in question's version of the events that transpired during that shift.

10. On June 4, 2004, the employer discharged the claimant from her job.

## III.  CONCLUSIONS & REASONING:

The claimant, her attorney, the employer, and the employer's agent attended the hearing.

The claimant did not quit her job. Therefore, Section 25(e)(1) of the Law does not apply to this case.

Given the facts as stated above, it is concluded that the employer has policies applicable to the conduct in question. Therefore, it is concluded that the appropriate initial analysis of this case under Section 25(e)(2) of the Law is whether the claimant was discharged for a knowing violation of a reasonable and uniformly enforced company rule or policy and whether the violation was the result of the employee's incompetence.

The employer's policy that prohibits employees from leaving work without permission is reasonable in and of itself given the nature of the employer's business.

The policy applies to all employees and the prescribed disciplinary action for such in the employee handbook is immediate discharge. Although the employer is unaware of any other violators of this policy, given the nature of their business and the possible ramifications of a violation of the policy, the employer's testimony that any/all violators of this policy would be subject only to discharge was reasonable and it is concluded that this policy is uniformly enforced by the employer within the meaning of Section 25(e)(2) of the Law.

The claimant, herself, was admittedly aware of this policy.

Commonwealth of Massachusetts

Mitt Romney, Governor
Kerry Healey, Lt Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance


Throughout the hearing, the claimant maintained that she never left the building during the shift in question, even adding that she understood that doing so would in violation of the employer's policies that could subject her to immediate discharge.

The employer presented 1 direct witness to the claimant's actions, the C.N.A. who had limited prior contact with the claimant. The C.N.A. in question had no prior problems or difficulties working with the claimant and had limited interaction with the claimant prior to May 21, 2004. Given this, it is found that this witness had no reason to be deceptive and no testimony or evidence was presented to suggest or establish that this witness had anything to gain by her testimony. The claimant, on the other hand, had everything to gain by her vehement denials of the allegations made against her.

The testimony of the C.N.A in question, in which she testified that she personally observed the claimant leave the building at 12:45 a.m. and periodically observed the claimant sitting in a car with an unidentified male from that time until she returned to her duties at approximately 5 a.m., was further found to be credible given the details she provided concerning such and due to the fact that many of things to which she testified were not in her own best interest such as her failure to provide pain medication for the patient who requested such while the claimant was out of the building, her failure to notify anyone else of authority of such, and her failure to immediately report the claimant's actions of that evening despite her understanding that such actions could be considered to be patient negligence on the part of the employer; which she further testified that she knew to be an action that she was mandated by Law to immediately report to the employer.

Consequently, it is concluded that the claimant violated the employer's policy and that her violation was a knowing violation within the meaning of Section 25(e)(2) of the Law.

Since compliance with the employer's policy required no special skills or abilities, it is concluded that the claimant's failure to comply with such was not due to any incompetence on her part.

Therefore, in view of the facts, the employer has met their burden of proof in establishing that the claimant was discharged for a knowing violation of a reasonable and uniformly enforced company policy and that the violation was not the result of any incompetence on the part of the claimant.

Benefits are denied.

Commonwealth of Massachusetts

Mitt Romney, Governor
Kerry Healey, Lt. Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance



**MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE**

**DOCKET NUMBER: 391142**

### IV.    DECISION:

The determination is overturned.

The claimant is disqualified from receipt of benefits under Section 25(e)(2) of the Law for the week ending June 12, 2004 and until she has been employed for at least 8 weeks, and in each week earned an amount equal to, or in excess of her weekly benefit amount.

**HEARINGS DEPARTMENT**

BY:    **Scott E. Pachico - rs
REVIEW EXAMINER**

**COPIES TO:**

Claimant
Claimant's Attorney
Employer
Employer's Rep/Attorney
File

Commonwealth of Massachusetts

Mitt Romney, Governor
Kerry Healey, Lt Governor

Jane C. Edmonds, Director, Department of Workforce Development
John P. O'Leary, Director, Division of Unemployment Assistance

Case 1:05-cv-10316-DPW   Document 44   Filed 09/23/2005   Page 40 of 62

IP 7 80826620 MCLA 060604 061804 001 0406072036001693   017725818 1062



**MASSACHUSETTS DIVISION OF UNEMPLOYMENT ASSISTANCE**
P.O. Box 9511
Boston, MA 02114

## Unemployment Insurance Request for Information

001



This form was mailed on June 08, 2004

| Due Date: | June 18, 2004 |
|---|---|

**Important!**

*To protect your rights to dispute this claim and any charges to your account that may result, and to receive a copy of the eligibility determination, this request must be completed in full and postmarked by the due date indicated above.*

MAYFLOWER PLACE NURSING CENTER
579 BUCKS ISLAND RD
W YARMOUTH, MA 02673

*Contact us at:* ☎ (617)626-5039
*for more information on completing this form.*

**Only Use Black Ink!**

You can change your address online at: http://www.Mass.gov/dua.
For assistance, call (617) 626-5040.

1. Verify your DUA Account number. **80-826620**         Make any corrections here:

2. This individual has filed a claim for Unemployment Insurance benefits, naming you as a former employer.

   Name: MacAren McLardy          Claim File Date:      06/07/04         Provide the start date   and last physical day at work
   SSN:  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             Claim Effective Date: 06/06/04          111600      053004

3. Read all of the statements carefully then fill in the **one** reason that best reflects the status of this claimant.

   Laid Off or Hours Reduced by Employer
      *Indicate recall date, if any*

   Quit

   ● Discharged for deliberate misconduct or violation of
   company rules or policy, including absenteeism or tardiness.

   Suspended for violation of company rules or policy.

   Discharged or quit due to a conviction of a felony or misdemeanor.

   Released due to inability to meet performance standards.
   No misconduct or violation of company rules or policy.

   On strike or locked out

   On a leave of absence (Explain reason in comments)

   Reasonable assurance of reemployment
   (educational institution only)

   Still employed or on call

   Comments (Optional): _____

4. At separation, did this individual receive or apply for any of these types of payments:

5. The wages below are already on file. Please correct any errors or omissions.

| | Wage Period | Gross Wages on File | Enter Missing Gross Wages or Correct Wages on File |
|---|---|---|---|
| Vacation Pay ? | **A** 04/01/03 thru 06/30/03 | $ 10,478.91 | |
| Retirement Benefits ? | **B** 07/01/03 thru 09/30/03 | $ 7,492.21 | |
| Severance Pay ? | **C** 10/01/03 thru 12/31/03 | $ 11,016.18 | |
| | **D** 01/01/04 thru 03/31/04 | $ 10,164.38 | |
| Employee signed a release of claims required to receive all severance pay | **E** 04/01/04 thru 06/05/04 | NONE | 7928 40 |

6. Contact Name for Separation Information: **DARLENE HOYT**

   Telephone: 508 790 0200   Ext:          Fax: 508 790 0004

   Employer Certification: These statements are true to the best of my knowledge and belief.
   Form Completed by: *Darlene Hoyt*   Signature: *Darlene Hoyt*

1,538                                    Form 1062 - Rev 02/20/03

# Mayflower Place
### P l a c e
*Nursing & Rehabilitation Center*



June 4, 2004

Macarena McLardy
393 Old Jail Lane
Barnstable, Ma 02630

Dear Ms. McLardy

On 5/30/04, a C.N.A. reported to the nursing supervisor that on 5/21/04 into 5/22/04 you had left this building at approximately 1:00 a.m. during your 11:00 p.m. to 7:00 a.m. shift to go out into the parking lot in a vehicle with a male visitor and did not return back into the building until approximately 5:00 a.m. The C.N.A. stated that upon leaving you had instructed the C.N.A.'s, whom you were supervising, to wave out the window at you if they needed you while you were out of the building. The supervisor reported this allegation to the Director of Nursing on 5/30/04 and the Director of Nursing reported this allegation to me on 5/30/04. The Director of Nursing and I concurred that an investigation into this allegation would commence. Based on our policy and procedure of patient abuse and investigation, the Supervisor was instructed to call you and tell you that you were removed from the schedule and to contact the Director of Nursing Services the following morning 5/31/04. The supervisor left a message for you stating this. You called the 3-11 supervisor back that later evening to ask what this was all about. She told you that it related to your performance and that you needed to call the Director on 5/31/04 and set up an appointment to discuss.

An investigation of the allegation began and many employees were interviewed.
On 5/31/04, you did not call the Director of Nursing Services and therefore, at approximately 11:00 a.m., the Director of Nurse telephoned you. She was not able to reach you and left a message asking that you return her call, as she needed to meet with you.
You called back later in the day and asked the Director why she wanted to meet with you. The Director explained that she was conducting an abuse investigation that involved you and that she needed to discuss the allegation with you in person. You stated that due to childcare issues, you would have to bring your child with you for the meeting. The Director explained that she would need your full attention and that it would be best to meet once you could arrange for childcare. You also stated that you wanted to bring someone with you to the meeting and the Director told you that you could bring anyone you chose. You then told the Director that you would be able to meet with her on Wednesday, June 2, 2004 at 10:00 a.m.
On Wednesday morning, the Director had a voice mail from you stating that you would not be in on Wednesday morning for the scheduled meeting as you had not been able to secure any individual to come with you for the meeting and because you did not know what the content of the meeting was about. The Director called you back on Wednesday and left a message asking for you to call her with another date for the meeting and that if you would call her back, she would explain to you the content of the allegation. She asked that if she was not available, that you speak with the Administrator. The Director did not get a call back from you on Wednesday.

579 Buck Island Road, West Yarmouth, MA 02673

(508) 957-7007    Facsimile (508) 790-8116

On Thursday morning, the Administrator had a voice mail message from you that had tried to reach the Director and had not be successful and, therefore you were leaving a message for the Administrator. On Thursday morning, the Director called you again at approximately 8:30 a.m. and left another message asking that you return the call.

By approximately 10:30 a.m., when the Director had not received a call back from you, the Administrator called you. You stated that you would not be able to meet with the Director of Nursing or myself until early next week, as you were unable to find legal representation to come with you until that time. You stated that you did not know the full content of the allegation and at that point I provided you with a full accounting of what you were alleged to have done on 5/21/04. I also told you that we had completed a full investigation and had received numerous statements from 11-7 employees, which corroborated the original allegation. I explained that we needed to resolve the investigation and to do so we needed to hear your explanation of the events of 5/21/04 in order to make a decision and finalize the investigation. You denied being gone from the building on 5/21/04 into – 5/22/04 and agreed to write a statement stating the events of 5/21/04 and bring the statement to the facility on 6/3/04.

I received your statement this morning. Your statement was simply a denial of the allegation and did not provide me with any explanation of what you did on your shift 5/21/04-5/22/04 that might corroborate your denial of the allegation that you were out of the building for an approximate four (4) hour period of time. You stated in your letter that you would be available to meet any time. The Business Office and the Director have called you several times today with no success in reaching you.

Since you have not provided any information that would support your denial of the allegation and I have multiple employees who have provide statements that support the allegation, I have no alternative but to terminate your employment with Mayflower Place Nursing Center. Please be advised that due to the nature of this allegation, I am, as is the Director of Nurses, required to submit this investigation to The Department of Public Health and the Massachusetts State Board of Nursing.

I have attached a termination Performance Improvement Plan which outlines in detail the specific violations related to the nurse practice act and the acts of neglect that relate directly to a resident due to your absence from the building. Your final paycheck is also enclosed.

Cathy Sawyer
Administrator



# EMPLOYEE POLICY MANUAL

Mayflower Place Nursing Center and Retirement Community
579 Buck Island Road
West Yarmouth, MA  02673

(508)  790-0200

Effective September 12, 2000 (Rev. C)

# TERMINATION

**Voluntary**   When an employee resigns, the resignation should be in writing and submitted to your Department Head with a minimum of two weeks notice expected.

**Involuntary**   Mayflower Place will dismiss or discipline an employee whose performance, attitude or conduct does not conform to the accepted rules required. Examples of gross misconduct, which are grounds for immediate dismissal include, but are not limited to the following:

Any physical or verbal abuse to a resident of other staff member.

Borrowing money or other possessions of residents.

Insubordination.

Malicious damage or destruction of property.

Disorderly, immoral or indecent conduct.

Theft or misappropriation of resident employee or facility property.

Intoxication or use of drugs while on duty or coming to work.

Malicious gossip or derogatory attacks or threats on any employee, visitor or resident.

 Swiping another employee's time badge. Swiping your own badge in or out at times other than those authorized. Leaving your job without permission.

Altering, falsifying or making a willful miss-statement of facts on any resident's record.

Accepting gratuities from residents or their families, unless specifically authorized by Mayflower Place.

Repeated tardiness. In excess of two occasions a month or 15 minutes in a 4-week period.

Altering, falsifying or making a willful miss-statement of job or work record, including omission of recent employment history, employment application, or other retirement community records.

 Soliciting, or Negligence.

Excessive absenteeism - Three or more days in a quarter.

Sleeping on Duty

Less serious misconduct will involve progressive discipline. Examples of such conduct are:

Discussion of confidential information concerning residents.
Discussing personal problems with residents.
Permitting another employee to use keys to enter Mayflower's property without proper authorization.
Willful or careless disregard of Mayflower's rules, safety and fire regulations or sanitary rules and regulations.
Absence from work without notifying your Department Head.
Use of profanity or abusive language.
Lingering after shift.
Taking extended break and mealtime.
Leaving the work premises without permission, walking off the job without authorization.

Progressive discipline leading to dismissal includes the following:

1. <u>An Oral Warning</u>. An oral warning will be evidenced by an Oral Warning write-up that will be signed by both the disciplined employee and the supervisor initiating the disciplinary action. Although an oral warning will be evidence in writing, it is not to be construed as a written warning. The oral warning from will be placed in the employee's file. The written form evidencing an oral warning should not be confused with or construed to be a written warning.

2. <u>A second warning in Writing</u>. Both the disciplined employee and the supervisor initiating the discipline will be expected to sign a written warning form as evidence of the written warning. A specific written warning, while a part of an employee's permanent record are considered to be "Stale" after 3-years, except in the case of documented patient abuse. Stale warnings will not be used against employee as part of the progressive disciplinary process.

3. <u>DISMISSAL</u>.



Monday, June 21, 2004

### DISCHARGE
### SECTION 25(e) (2)
### EMPLOYER STATEMENT

**DET**

COMMONWEALTH OF MASSACHUSETTS
DIVISION OF
EMPLOYMENT
AND TRAINING

On _____ Time _____ I left a message for: _____
on his/her answering machine/voice mail.

On _____ Time _____ I left a message with _____
to have _____ call me.

I indicated that I needed information about the reasons the claimant was separated from employment in order to determine her/his eligibility for unemployment benefits. I asked the employer to call me by _____, and indicated that if I did not hear from her/him, I would resolve the issue based on available information.

On _____ a form 261 to the employer.
Contacts    06-16-04-9:45 A.M.-SPOKE TO MARGARET O'REAGAN-DIRECTOR OF NURSING

My name is:    Armand Choquette

from the DET, and I am contacting you in order to obtain information about your former employee, MCLARDY, MACAREN

S/he has filed a claim for unemployment benefits and states that s/he was discharged from your company (your company indicated she was discharged). I need to ask some questions so that I can make a determination regarding eligibility.

HAS THE  1062    BEEN RETURNED ?   ◉ Yes    ○ No

IF NOT, REMIND THE EMPLOYER TO RETURN IT BY THE DUE DATE  TO PROTECT THEIR RIGHTS AS AN INTERESTED PARTY   go to Late 1062/1074 Template if form is late

What was the claimant's last day of work?        05-30-04

How long did s/he work there?        4 YEARS

What was her/his job or position?        L.P.N.

What was her/his supervisor's name/Title?        MARGARET O"REGAN-DIRECTOR OF NURSING

What caused the claimant to be discharged?

THE CLAIMANT WORKED FOR OUR FACILITY, WHICH IS A NURSING HOME, FOR 4 YEARS AS AN L.P.N. WORKING ON WEEK ENDS. SHE WAS DISCHARGED ON 06-04-04 BY CATHY SAWYER, THE FACILITY ADMINISTRATOR, FOR ABUSE OF A PATIENT, A VIOLATION OF EMPLOYER POLICY. THIS DISCHARGE CENTERED AROUND AN INCIDENT THAT TOOK PLACE ON 05-21-04 TO 05-22-04 WHEN THE CLAIMANT WAS WORKING AN OVERNIGHT 11 P.M. TO 7 A.M. SHIFT. THE CLAIMANT WAS THE CHARGE NURSE FOR A WARD OF FORTY PATIENTS AND WAS SUPERVISING 2 C.N.A'S. ON 05-30-04 ONE OF THE C.N.A.'S WHO WAS WORKING WITH THE CLAIMANT THAT NIGHT CAME FORWARD TO A NURSING SUPERVISOR AND CHARGED THE CLAIMANT WITH BEING OUT OF THE BUILDING ON THE NIGHT IN QUESTION OF 05-21-04 TO 05-22-04. THE C.N.A SAID THAT THE CLAIMANT WAS SITTING IN A CAR IN THE FACILITY PARKING LOT FOR 4 HOURS WITH A MALE CALLER BETWEEN THE HOURS OF 1 A.M AND 5 A.M. WHILE THE CLAIMANT WAS DOING THIS, THE PATIENTS ON HER WARD WERE BEING NEGLECTED AND ONE PATIENT IN PARTICULAR NEEDED MEDICATION AND THE CLAIMANT WAS NOT AVAILABLE TO DISPENSE THE MEDICATION  BECAUSE OF THIS

*Page 4 of 7*        *(rptlS02)*      Social   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   Claim File Date:   06/07/04    BYE:   06/04/05

**\*Does a constructive deduction apply in this case?**

**\*\* If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?**

FROM THE WORK SCHEDULE. AN INVESTIGATION WAS COMMENCED AND STATEMENTS WERE TAKEN FROM THE TWO C.N.A.'S WHO WORKED WITH THE CLAIMANT THAT NIGHT. BOTH MELISSA THIBEAULT AND JEAN MARTIOUS (A MAN) CHARGED THE CLAIMANT WITH BEING OUT OF THE BUILDING SITTING IN A CAR IN THE PARKING LOT WITH A MALE VISITOR FOR 4 HOURS. WHEN THE CLAIMANT WAS ADVISED OF THE ALLEGATIONS, SHE DENIED THEM. HOWEVER, SHE REFUSED TO COME IN TO THE FACILITY FOR A MEETING ON THE ISSUE. FIRST SHE SAID SHE HAD CHILD CARE PROBLEMS. THEN SHE SAID THAT SHE WOULD NOT COME IN WITHOUT LEGAL REPRESENTATION. WHEN IT BECAME CLEAR TO US THAT SHE WAS DODGING THE MEETING, SHE WAS DISCHARGED ON 06-04-04. WE FOUND THE CHARGES BY THE C.N.A.'S CREDITABLE AND THE CLAIMANT'S DENIAL NOT CREDIBLE. THERE IS NO INDEPENDENT VERIFICATION OF THE CHARGES BY MANAGEMENT OR ANYONE IN AUTHORITY.



**Was the claimant fired for a violation of a rule or policy?  What was this rule or policy?:**   YES-PATIENT ABUSE IS GROUNDS FOR IMMEDIATE TERMINATION

**What is the purpose of this rule or policy?:**   TO PROTECT THE PATIENTS

**What did the claimant do that was in violation of the rule or policy?**   THE CLAIMANT ABSUSED THE PATIENTS BY BEING AWAY FROM THE JOB FOR 4 HOURS WITHOUT AUTHORIZATION.

**Was the claimant aware of the rule or policy?**   YES

**How was the claimant made aware of the rule or policy?:**   EMPLOYEE HANDBOOK

**What has happened to other employees who violated the rule or policy?**   IMMEDIATE DISCHARGE

**What are the consequences of violating the rule or policy?**   IMMEDIATE DISCHARGE

**If there was no violation of rule or policy, what was the final incident which caused you to discharge the claimant?**   THE CLAIMANT WAS CHARGED WITH PATIENT ABUSE FOR BEING OFF THE JOB FOR 4 HOURS WITHOUT AUTHORIZATION

**When did this final incident occur?**   05-21-04 TO 05-22-04

**What did the claimant do, or fail to do?**   THE CLAIMANT WAS OFF THE JOB WITHOUT AUTHORIZATION FOR 4 HOURS

**Had the claimant been warned for previous incidents?**   NO

**If yes, when were these warnings given, who gave them, and were they written or verbal?**

**What were the contents of these warnings?** .

**If there were no warnings given prior to discharge, how was the claimant aware that her/his actions or behavior were not acceptable to you?**   EMPLOYEE HANDBOOK

**Rebuttal:**   06-17-04-11 A.M.-SPOKE TO MARGARET O'REAGAN-DIRECTOR OF NURSING FOR REBUTTAL.- THIS IS REALLY A "THEY SAY"-"SHE SAYS" ISSUE. THERE IS NO INDEPENDENT SUPERVISORY OR MANAGERIAL VERIFICATION OF THE CHARGES AGAINST THE CLAIMANT. WE SIMPLY FIND THE C.N.A.'S STATEMENTS TO BE CREDIBLE. I DO NOT KNOW WHY THE C.N.A.'S WAITED A WEEK TO COME FORWARD WITH THE CHARGES. THEY ARE CURRENTLY UNDER INVESTIGATION FOR POSSIBLE MISCONDUCT FOR THEIR ROLES IN THIS INCIDENT AND ANY

*Does  a constructive deduction apply in this case?

** If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?

FAILURE EVEN THOUGH IT PROPERLY WAS, DID NOT FOLLOW UP, DID NOT GO TO OTHER SUPERVISORY PERSONELL ON DUTY AT THE TIME (SUCH AS MS FRANKLIN) TO REPORT THE INCIDENT AT THE TIME IT TOOK PLACE PARTICULARLY IF THERE WAS A PATIENT IN NEED OF MEDICATION. ON THE OTHER HAND, I AM UNAWARE OF ANY ANIMOSITY BETWEEN THE CLAIMANT AND THE C.N.A. JEAN MARITOUS, OVER THE CLAIMANT REJECTING ANY ALLEDGED SEXUAL ADVANCES FROM MR MARITOUS, THAT WOULD CAUSE THE C.N.A.'S TO FILE A FALSE REPORT. THE CLAIMANT IS CORRECT THAT THE FACILITY SOMETIMES WORKED HER A 16 HOUR DOUBLE SHIFT WHICH TECHNICALLY IS NOT ALLOWED BY STATE REGULATIONS, BUT WE WERE UNAWARE OF THIS, AND WHEN IT WAS BROUGHT TO OUR ATTENTION, WE STOPOPED IT AND WE WERE IN THE PROCESS OF REVISING THE CLAIMANT'S SCHEDULE TO AVOID THIS IN THE FUTURE. THIS HAD NOTHING TO DO WITH THE CLAIMANT'S DISCHARGE.



*Does  a constructive deduction apply in this case?

** If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?

Case 1:05-cv-00988-DPW    Document 44    Filed 09/23/2005    Page 49 of 62



**DISCHARGE**
**SECTION 25 (e)(2)**

**CLAIMANT STATEMENT**

MASSACHUSETTS
DIVISION OF
EMPLOYMENT
AND TRAINING

| | | | |
|---|---|---|---|
| Date of Statement: | Social 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 | Claim Date: 06/07/04 | Issue ID: 02 |

Claimant's Name: MCLARDY, MACAREN                              BYE 06/04/05

Address: 393 OLD JAIL LANE      City: BARNSTABLE      State: MA      Zip: 02630

Employer's Name: MAYFLOWER PLACE NURSING CENTER

Address: 579 BUCKS ISLAND RD      City: W YARMOUTH      State: MA      Zip: 02673

Interpreter's Name:

Address                      City:      State: MA      Zip:

On          Time          I left a message on the claimant's answering machine.
On          Time          I left a message with the claimants
Named:
I indicated that I needed information about the reasons s/he was separated from employment in order
to determine her/his eligibility for unemployment benefits. I asked the claimant to call me by
                          and indicated that if I did not hear from her/him, I would resolve the issue
based on available information.
On          I mailed a form          to the claimant.
Contacts 06-17-04-10 A.M.-SPOKE TO CLAIMANT

My name is: Armand Choquette
You have been referred to me for this interview because you said that you were discharged by your employer;
(your employer said that you were discharged). I need to ask you some additional questions. I will be
interviewing your employer as well, and after that I may need to contact you again. Once I have all of this
information, a determination will be made regarding your eligibility for benefits.

Did you work full-time or part-time for this employer?          FULL TIME

What reason did your employer give you for your discharge?

I WORKED FOR THE EMPLOYER FOR 4
YEARS AS AN L.P.N. IN A NUSING HOME. I
WORKED ON WEEKENDS. I WAS
DISCHARGED ON 06-04-04 BY CATHY
SAWYER, THE FACILITY ADMINISTRATOR,
BECAUSE SHE SAID THAT I HAD ABUSED A
PATIENT. ON 05-30-04 ONE OF THE C.N.A.'S
I WORK WITH AND SUPERVISE CAME
FORTH AND TOLD MANAGEMENT THAT ON
THE NIGHT OF 05-21-04 TO 05-22-04 WHILE
I WAS WORKING THE OVERNIGHT 11 P.M.
TO 7 A.M.SHIFT I HAD LEFT THE BUILDING
FOR 4 HOURS BETWEEN 1 A.M. AND 5 A.M.
TO SIT IN A CAR WITH A MALE VISITOR IN
THE FACILITY PARKING LOT. DURING THIS
TIME A PATIENT SUPPOSED WENT
WITHOUT PAIN MEIDCATION BECAUSE I
WAS NOT AVAILABLE TO DISPENSE IT.
THIS IS A TOTALLY FALSE ALLEGATION
WHICH I VIGOROUSLY DENY. I NEVER LEFT
THE BUILDING. I NEVER SAT IN THE

*Does a constructive deduction apply in this case?

** If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?



VISITOR. THE C.N.A. WHO MADE THIS CHARGE, JEAN MARITOUS, WHO IS MALE, IS ANGRY AT ME BECAUSE I REBUFFED HIS SEXUAL ADVANCES, WHICH I REPORTED TO MANAGEMENT. IF THIS INCIDENT DID TAKE PLACE, WHY DID THE C.N.A WAIT TEN DAYS TO REPORT IT? THERE WAS ANOTHER CHARGE NURSE ON DUTY IN THE NEXT WARD RIGHT NEXT DOOR. HER NAME IS KAY FRANKLIN. IF I WAS OUT OF THE BUILDING AS CHARGED AND A PATIENT WAS IN PAIN AND NEEDED MEDICATION, WHY DIDN'T THE C.N.A'S GO TO MS FRANKLIN AND REPORT ME ON THE NIGHT THE INCIDENT TOOK PLACE? THE REASON THEY DID NOT DO THIS IS BECAUSE THE INCIDENT NEVER TOOK PLACE. THIS FACILITY HAS BEEN TRYING TO GET RID OF ME. THEY HAVE ILLEGALLY WORKED ME ON A DOUBLE 16 HOUR WEEKEND SHIFT WHICH IS AGAINST THE LAW AND STATE INSPECTORS WERE COMING AND THE FACILITY WAS GOING TO BE CITED FOR THIS. THE DIRECTOR OF NURSES, MS O"REAGAN, ALREADY TOLD ME THAT THEY WOULD HAVE TO CHANGE MY SCHEDULE BECAUSE OF THE ILLEGALITY OF WORKING A DOUBLE SHIFT. THE EMPLOYER THEN WANTED ME TO COME IN FOR A MEETING ON THESE FALSE CHARGES. WHEN I SAID I WOULD NOT COME IN WITHOUT LEGAL REPRESENTATION. I WAS DISCHARGED. I DID NOT VIOLATE ANY RULE OR COMMIT ANY MISCONDUCT. I HAD NEVER BEEN WARNED. I KNOW WHY JEAN MARITOUS IS LYING. I DO NOT KNOW WHY THE SECOND C.N.A., MELISSA THIBEAULT IS LYING. I WAS NEVER GIVEN THEIR STATEMENTS. I DO NOT KNOW WHAT EXACTLY THEY SAID. I JUST FIND IT ALL TOO CONVINIENT THAT THESE CHARGES COME UP AGAINST ME JUST WHEN THE EMPLOYER IS IN TROUBLE FOR ILLEGALLY WORKING ME A DOUBLE SHIFT. .

**Was this for a violation of a company rule or policy?**   ○ Yes   ● No

**Please state the rule or policy which your employer said that you violated.**   THE EMPLOYER SAYS I ABUSED A PATIENT BY LEAVING THYE FACILITY FOR 4 HOURS WITHOUT PERMISSION WHICH IS A TOTAL FABRICATION.

**What did you do that was in violation of this rule or policy?**   NOTHING

**Why did you do this?**   I DID NOT DO ANYTHING

**Were you aware of the rule?**   YES

**How were you made aware of the rule?**   EMPLOYEE HANDBOOK

**What are the consequences of violating the rule or policy?**   DISCHARGE

*Page 2 of 7*        *(rptlS02)*        Social   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   Claim File Date:   06/07/04   BYE:   06/04/05

**\*Does a constructive deduction apply in this case?**

**\*\* If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?**

What has happened to other employees     I DON'T KNOW
who violated the rule or policy?

Are you able, available and actively seeking work?     ◉ Yes     ○ No

What was the final incident          THE EMPLOYER SAID I ABUSED A PATIENT WHICH I DID NOT DO
which led to your separation?

When did this final incident occur?:     IT NEVER OCCUIRED

Why did you do, or fail     I DID NOT DO OR FAIL TO DO ANYTHING
to do this?

Had you been warned for previous incidents?     ○ Yes     ◉ No

If yes, when were these warnings
given, and who gave them?:

What were the
contents of these

If you were not given warnings, were you          NO
aware that your actions or behavior was
not acceptable to your employer?

If yes, how and when were you made aware that
this was not acceptable to your employer?

Why did you do this?:     I DID NOT DO ANYTHING

Are you able, available and actively seeking work?     ◉ Yes     ○ No
          If no, select Able and Avialable template

Rebuttal:

*Does  a constructive deduction apply in this case?

** If 1062/1074 is late did you obtain the facts to resolve the timeliness issue ?



MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE

## NOTICE TO EMPLOYER OF APPROVED CLAIM

**S.S.A. No:** 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

Claim Filed on: 06/07/04
Benefit Year Expires 06/04/0

**Claimant's Name:**     MACAREN MCLARDY
393 OLD JAIL LANE,
BARNSTABLE, MA 02630-

**Issued By:**     Post Office Box 7000, Brockton, MA 02303
(Telephone: (508) 894-4863), on June 21, 2004

**Employer's Name:**     MAYFLOWER PLACE NURSING CENTER
579 BUCKS ISLAND RD,
W YARMOUTH, MA 02673-

This claim involves a question of disqualification under General Laws Chapter 151A, Section 25(e)(2) of the Massachusetts Employment and Training Law, (see over). After consideration of the facts obtained, the claim is approved for the following reason:

> You discharged the claimant due to allegations of patient abuse, i.e. leaving the building during her shift for 4 hours. It has not been established by substantial and credible evidence that such allegations were factual. Therefore, such discharged was not attributable to a knowing violation of a reasonable and uniformly enforced rule of the employer, or to deliberate misconduct in willful disregard of the employing unit's interest and the claimant is not subject to disqualification under the above-cited section of the Law.

DIVISION OF UNEMPLOYMENT ASSISTANCE

Date _6/21/04_      by _Armand F Chenette_

### YOU MAY REQUEST A HEARING ON THIS DETERMINATION

This determination will became final unless (1) you request a hearing within ten calendar days after the date of mailing or delivery in hand, or (2) you request a hearing within eleven to thirty calendar days after the date of mailing or delivery in hand and it is established that such delay was for good cause.

A request for hearing may be filed by mail, using a signed letter, the reverse side of this form, or in person using the form provided therein, at any office of this Division. The hearing will be conducted in accordance with The Standard Rules of Practice and Procedure, 801 CMR 1.02 and 1.03 (Informal/Fair Hearing Rules). (See your local office shown above.)

AVAILABILITY OF RULES. Copies of all rule
the cost of public records as determined b

*Commonwealth of Massac.*
Form 0124-M Rev 03-04

IMPOP
Th

REQUEST FOR HEARING

LOCAL OFFICE NAME AND NO.

Brockton

(57A)

TO EMPLOYER:

This determination will become final unless within ten calendar days of the mailing date you request a hearing. A request for a hearing may be made by completing the spaces below and mailing to the address shown on reverse side.

I hereby request a hearing with regard to this determination.

Claimant's Name: Maureen McCarty

S.S.A. No.: 017 - 72 - 5858

Employer's Name: Mayflower Place Nursing Ctr.   Address: 579 Buck's Island Rd. W. Yarmouth, MA 02673

Date: 06/22/04   Signed by: _____

CCRC
790 Turnpike St. #202
N. Andover, MA 01845

0124 Rev.12-92

4/21

UNEMPLOYMENT
COST
REDUCTION
CORPORATION

770 Turnpike Street • Suite 202
North Andover, MA 01845-6156

72B

Mass DUA
P.O. Box 7000
Brockton, MA 02303

02203-47000

SOUTHEAST REGIONAL OFFICE
37 MAIN STREET
TAUNTON, MA.        02780
508-824-6458
TDD 1-800-438-0471
FAX 617-727-2273

**DUA**
DIVISION OF
UNEMPLOYMENT
ASSISTANCE
Hearings Department

Date Mailed:  10/16/04

### NOTICE OF HEARING

*APPEAL NOTICE*OPEN IMMEDIATELY*

MACAREN    MCLARDY
3 FRANBILL ROAD

HYANNIS          MA 02601-1426

EMPLOYER:  80826620
MAYFLOWER PLACE NURSING CENTER

W YARMOUTH          MA 026730000

CLAIMANT:    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
MACAREN    MCLARDY
3 FRANBILL ROAD
HYANNIS          MA 026011426
508-771-5617

The  **EMPLOYER**  has appealed a determination issued on   06/21/04 .

A **HEARING** is now scheduled:                                      DOCKET NUMBER:    391142

LOCATION*:    DIV OF UNEMPLOYMENT ASSISTANCE
CAREER OPPORTUNITIES HYANNIS
75 PERSEVERANCE WAY 2ND FL
HYANNIS

DATE:    11/05/04              TIME:  10:50 AM EASTERN TIME

POSTPONEMENT REQUEST DEADLINE:  10/29/04

The ISSUES to be heard are whether:

*THERE IS SUBSTANTIAL AND CREDIBLE EVIDENCE TO SHOW THAT THE CLAIMANT LEFT WORK
VOLUNTARILY WITH GOOD CAUSE ATTRIBUTABLE TO THE EMPLOYER OR ITS AGENT, OR INVOLUNTARILY
FOR URGENT, COMPELLING AND NECESSITOUS REASONS, OR BY DISCHARGE FOR DELIBERATE
MISCONDUCT IN WILFUL DISREGARD OF THE EMPLOYING UNIT'S INTEREST, OR FOR A KNOWING
VIOLATION OF A REASONABLE AND UNIFORMLY ENFORCED POLICY OR RULE, UNLESS THE VIOLATION
WAS THE RESULT OF THE EMPLOYEE'S INCOMPETENCE.  MGL 151A, SS.25(E)(1) & (E)(2)

SPECIAL MESSAGES:

*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.

*DIRECTIONS TO LOCATION OF HEARING:

DIRECTIONS TO HYANNIS HEARINGS: RTE 6 E OR W TO EXIT 6, RTE 132 S.
AT FOURTH LIGHTS (SAM DIEGO'S ON LEFT), TAKE FIRST LEFT TO INDEPENDENCE PARK.
AT STOP LIGHT (1/4 MI), TAKE LEFT TO HADAWAY ROAD, THEN FROM RIGHT LANE TAKE FIRST RIGHT
INTO PARKING LOT.
DUA HEARINGS IN CAREER OPPORTUNITIES HYANNIS IN EXCEL BUILDING ON LEFT.

*Commonwealth of Massachusetts*
Form 3702-M Rev. 02-05-04                                                      (over)

150

SOUTHEAST REGIONAL OFFICE    Document 44    Filed 09/23/2005    Page 56 of 62
37 MAIN STREET
TAUNTON, MA.          02780
508-824-6458
TDD 1-800-438-0471
FAX 617-727-2273



MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE
Hearings Department

Date Mailed:  **10/16/04**

## NOTICE OF HEARING

*APPEAL NOTICE*OPEN IMMEDIATELY*

MAYFLOWER PLACE NURSING CENTER

**579 BUCKS ISLAND RD**
**W YARMOUTH        MA 02673-0000**

EMPLOYER:  80826620
MAYFLOWER PLACE NURSING CENTER

W YARMOUTH          MA 026730000

CLAIMANT:   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
MACAREN    MCLARDY
3 FRANBILL ROAD
HYANNIS                MA 026011426
508-771-5617

The  **EMPLOYER**   has appealed a determination issued on   **06/21/04** .

A **HEARING** is now scheduled:

DOCKET NUMBER:  391142

LOCATION*:    DIV OF UNEMPLOYMENT ASSISTANCE
CAREER OPPORTUNITIES HYANNIS
75 PERSEVERANCE WAY 2ND FL
HYANNIS

DATE:    11/05/04              TIME:   10:50 AM EASTERN TIME

POSTPONEMENT REQUEST DEADLINE: 10/29/04

The ISSUES to be heard are whether:

*THERE IS SUBSTANTIAL AND CREDIBLE EVIDENCE TO SHOW THAT THE CLAIMANT LEFT WORK
VOLUNTARILY WITH GOOD CAUSE ATTRIBUTABLE TO THE EMPLOYER OR ITS AGENT, OR INVOLUNTARILY
FOR URGENT, COMPELLING AND NECESSITOUS REASONS, OR BY DISCHARGE FOR DELIBERATE
MISCONDUCT IN WILFUL DISREGARD OF THE EMPLOYING UNIT'S INTEREST, OR FOR A KNOWING
VIOLATION OF A REASONABLE AND UNIFORMLY ENFORCED POLICY OR RULE, UNLESS THE VIOLATION
WAS THE RESULT OF THE EMPLOYEE'S INCOMPETENCE. MGL 151A, SS.25(E)(1) & (E)(2)

SPECIAL MESSAGES:

*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.

*DIRECTIONS TO LOCATION OF HEARING:

DIRECTIONS TO HYANNIS HEARINGS: RTE 6 E OR W TO EXIT 6, RTE 132 S.
AT FOURTH LIGHTS (SAM DIEGO'S ON LEFT), TAKE FIRST LEFT TO INDEPENDENCE PARK.
AT STOP LIGHT (1/4 MI), TAKE LEFT TO HADAWAY ROAD, THEN FROM RIGHT LANE TAKE FIRST RIGHT
INTO PARKING LOT.
DUA HEARINGS IN CAREER OPPORTUNITIES HYANNIS IN EXCEL BUILDING ON LEFT.

*Commonwealth of Massachusetts*
Form 3702-M Rev. 02-05-04

(over)

| VENDOR | | REMITTANCE ADVICE | | | MAYFLOWER PLACE NO... | |
|---|---|---|---|---|---|---|
| INVOICE NO | | | | AMOUNT | | ...MENT |
| | | Final check — see attached | | | | |
| | | Check — Wate | | | | |
| | | VOUCHER TOTALS | | (29) | | $643.90 |

MAYFLOWER PLACE NURSING CENTER, INC.

Fleet   www.fleet.com

DATE 6-1-04   CHECK NO.   21069

5-13/110

CHECK AMOUNT

$643.90

PAY EXACTLY _____ DOLLARS AND _____ CENTS

Six hundred forty three + 90/cents

PAY TO THE ORDER OF:   Weeauna Mc Lavely

VOID 180 DAYS FROM DATE OF ISSUE

Margaret Holmes

AUTHORIZED SIGNATURE

⑈021069⑈ ⑈011000138⑈ 0038? 17332⑈

710
1 of 2

June 3rd, 2004.

Cathy Sawyer,

I Am writing in response to your request today, for a written statement. I was left a voice message on my answering machine on sunday may 30th by Sheri Fox stating that I was not to report to work that night @ 11pm. I returned the phone call when I got the message + spoke with Susan Spon Burg - Supervisor on - who refused to state why. I then spoke with Margaret, Do who would not give me any information as to why I could not return to work, that I needed to come in, in order for her to tell me. I then told her I felt I should know why + that I was seeking legal advice; she then stated that I was off the schedule b/c I was being investigated for abusing a resident. She would not tell me withot

RESIDENT OR WHO WAS ACCUSING
ME. WHEN I SPOKE O YOU
TODAY JUNE 3RD YOU TOLD
ME WHEN I ALLEGEDLY
AROUSED A RESIDENT + STILL
WOULD NOT SAY WHICH
RESIDENT + ONLY STATED THAT
CNAS HAD REPORTED ME +
THAT THEY DIDNT REPORT IT
EARLIER B|C THEY WERE
AFRAID B|C IM THEIR
SUPERVISOR MY RESPONSE
TO THIS IS THAT ON
MAY 21ST 11-7 SHIFT I
DID NOT LEAVE THE
BUILDING FOR FIVE HOURS
AND I HAVE NOT ABUSED
ANY PATIENT LIKE YOU
STATED + I DID NOT EVER
WITHOLD PAIN MEDICATION +
NEVER WOULD FROM ANY
PATIENT AS YOU HAVE STATED.
IN ADDITION IT IS IMPOSSIBLE
FOR ME TO RESPOND IN
ANY GREATER DETAIL WITHOUT
IDENTITY OF THE ALLEGED
ABUSE VICTIM'S NAME OR ACCUSATION
I REMAIN WILLING TO COOPERATE
WITH CUMING IN TO SPEAK W| YOU AT
ANY TIME MACARENA M

**RECORD OF ATTENDANCE AT HEARING**

Hearings Department

Case No.: 39142

| HEARING IN | | BEFORE | |
|---|---|---|---|
| Hyannis | | S___ | |
| APPELLANT | | | DATE |
| Er — Mayflower Place Nursing Ctr | | | 11-5-04 |

The following were present:

1:04

**Claimant:**

| Name | Address |
|---|---|
| MACARENA McLARDY | 3 Franklin Road |
| Macarena McLardy | Hyannis, MA 02601 |
| Stephen T. Fanning, Esq. | |
| | |
| | |
| | |
| | |

**For Employer:**

| Name | Title |
|---|---|
| Cathy Sawyer | Administrator |
| Cathy Sawyer | |
| Margaret O'Regan (O'Regan) | Director of Nursing |
| Margaret O'Regan | |
| George Wright | Employer Agent  UCRC |
| | |
| Merlissa Dibeau | LPN |

**For Director:**

| | |
|---|---|
| | |
| | |

COMMONWEALTH OF MASSACHUSETTS

SOUTHEAST REGIONAL OFFICE
37 MAIN STREET
TAUNTON, MA.        02780
508-824-6458
TDD 1-800-438-0471
FAX 617-727-2273

**MASSACHUSETTS**
DIVISION OF
UNEMPLOYMENT
ASSISTANCE
Hearings Department

Date Mailed:   08/20/04

## NOTICE OF HEARING

### *APPEAL NOTICE*OPEN IMMEDIATELY*

### MAYFLOWER PLACE NURSING CENTER

**579 BUCKS ISLAND RD**
**W YARMOUTH        MA 02673-0000**

EMPLOYER:  80826620
           MAYFLOWER PLACE NURSING CENTER

           W YARMOUTH        MA 026730000

CLAIMANT:  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
           MACAREN    MCLARDY
           3 FRANBILL ROAD
           HYANNIS            MA 026011426
           508-771-5617

The  **EMPLOYER**  has appealed a determination issued on  **06/21/04** .

A **HEARING** is now scheduled:                            **DOCKET NUMBER:   391142**

           LOCATION*:   DIV OF UNEMPLOYMENT ASSISTANCE
                        CAREER OPPORTUNITIES HYANNIS
                        75 PERSEVERANCE WAY 2ND FL
                        HYANNIS

           DATE:   09/08/04          TIME:  11:50 AM EASTERN TIME

           POSTPONEMENT REQUEST DEADLINE:  09/01/04

The ISSUES to be heard are whether:

*THERE IS SUBSTANTIAL AND CREDIBLE EVIDENCE TO SHOW THAT THE CLAIMANT LEFT WORK
VOLUNTARILY WITH GOOD CAUSE ATTRIBUTABLE TO THE EMPLOYER OR ITS AGENT, OR INVOLUNTARILY
FOR URGENT, COMPELLING AND NECESSITOUS REASONS, OR BY DISCHARGE FOR DELIBERATE
MISCONDUCT IN WILFUL DISREGARD OF THE EMPLOYING UNIT'S INTEREST, OR FOR A KNOWING
VIOLATION OF A REASONABLE AND UNIFORMLY ENFORCED POLICY OR RULE, UNLESS THE VIOLATION
WAS THE RESULT OF THE EMPLOYEE'S INCOMPETENCE.  MGL 151A, SS.25(E)(1) & (E)(2)

SPECIAL MESSAGES:

*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.

*DIRECTIONS TO LOCATION OF HEARING:

DIRECTIONS TO HYANNIS HEARINGS: RTE 6 E OR W TO EXIT 6, RTE 132 S.
AT FOURTH LIGHTS (SAM DIEGO'S ON LEFT), TAKE FIRST LEFT TO INDEPENDENCE PARK.
AT STOP LIGHT (1/4 MI), TAKE LEFT TO HADAWAY ROAD, THEN FROM RIGHT LANE TAKE FIRST RIGHT
INTO PARKING LOT.
DUA HEARINGS IN CAREER OPPORTUNITIES HYANNIS IN EXCEL BUILDING ON LEFT.

*Commonwealth of Massachusetts*
Form 3702-M Rev. 02-05-04                                                          (over)

MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE
Hearings Department

37 MAIN STREET
TAUNTON, MA.        02780
508-824-6458
TDD 1-800-438-0471
FAX 617-727-2273

Date Mailed:  08/20/04

## NOTICE OF HEARING

*APPEAL NOTICE*OPEN IMMEDIATELY*

MACAREN   MCLARDY
3 FRANBILL ROAD

HYANNIS          MA 02601-1426

EMPLOYER:  80826620
MAYFLOWER PLACE NURSING CENTER

W YARMOUTH        MA 026730000

CLAIMANT:  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
MACAREN   MCLARDY
3 FRANBILL ROAD
HYANNIS           MA 026011426
508-771-5617

The **EMPLOYER** has appealed a determination issued on  06/21/04

A **HEARING** is now scheduled:                    DOCKET NUMBER:  391142

LOCATION*:  DIV OF UNEMPLOYMENT ASSISTANCE
CAREER OPPORTUNITIES HYANNIS
75 PERSEVERANCE WAY 2ND FL
HYANNIS

DATE:  09/08/04          TIME:  11:50 AM EASTERN TIME

POSTPONEMENT REQUEST DEADLINE: 09/01/04

The ISSUES to be heard are whether:

*THERE IS SUBSTANTIAL AND CREDIBLE EVIDENCE TO SHOW THAT THE CLAIMANT LEFT WORK
VOLUNTARILY WITH GOOD CAUSE ATTRIBUTABLE TO THE EMPLOYER OR ITS AGENT, OR INVOLUNTARILY
FOR URGENT, COMPELLING AND NECESSITOUS REASONS, OR BY DISCHARGE FOR DELIBERATE
MISCONDUCT IN WILFUL DISREGARD OF THE EMPLOYING UNIT'S INTEREST, OR FOR A KNOWING
VIOLATION OF A REASONABLE AND UNIFORMLY ENFORCED POLICY OR RULE, UNLESS THE VIOLATION
WAS THE RESULT OF THE EMPLOYEE'S INCOMPETENCE.  MGL 151A, SS.25(E)(1) & (E)(2)

SPECIAL MESSAGES:

*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.

*DIRECTIONS TO LOCATION OF HEARING:

DIRECTIONS TO HYANNIS HEARINGS: RTE 6 E OR W TO EXIT 6, RTE 132 S.
AT FOURTH LIGHTS (SAM DIEGO'S ON LEFT), TAKE FIRST LEFT TO INDEPENDENCE PARK.
AT STOP LIGHT (1/4 MI), TAKE LEFT TO HADAWAY ROAD, THEN FROM RIGHT LANE TAKE FIRST RIGHT
INTO PARKING LOT.
DUA HEARINGS IN CAREER OPPORTUNITIES HYANNIS IN EXCEL BUILDING ON LEFT.

*Commonwealth of Massachusetts*
Form 3702-M Rev. 02-05-04                                                  (over)

350